**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ANGIE SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-04651-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[RE: ECF 60, 66] |

Defendants Experian Information Solutions, Inc. ("Experian"), Seventh Avenue, Inc. ("Seventh Avenue"), Ginny's Inc. ("Ginny's"), and Monroe & Main, Inc. ("Monroe & Main") move to dismiss Plaintiff Angie Smith's first amended complaint ("FAC"), which asserts violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a). For reasons discussed below, the motions are GRANTED WITH LEAVE TO AMEND.

## I.    BACKGROUND[1]

Plaintiff filed for Chapter 13 bankruptcy protection on March 20, 2015, and her plan was confirmed on October 14, 2015. FAC ¶¶ 93, 97, ECF 39. On March 3, 2016, Plaintiff "ordered a three bureau report from Experian, Inc. to ensure proper reporting by Plaintiff's Creditors." *Id.* ¶ 98. She alleges that this report ("March 2016 Credit Report") included twelve different trade lines containing inaccurate, misleading, or incomplete information. *Id.* ¶ 99. Plaintiff neither attaches a copy of the March 2016 Credit Report nor provides specifics regarding the alleged inaccuracies

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

contained therein. *Id.* She asserts only that "multiple trade lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, in collections, and/or charged off. Some accounts even failed to register that Plaintiff was making payments on the account through Plaintiff's Chapter 13 plan." *Id.*

Plaintiff disputed the inaccurate trade lines via certified mail sent to three different credit reporting agencies ("CRAs"), Experian, Equifax, Inc., and TransUnion, LLC on May 4, 2016. FAC ¶ 100. Each CRA received Plaintiff's dispute letter and in turn notified the entities that had furnished the disputed information ("furnishers") by means of automated credit dispute verifications ("ACDVs"). *Id.* ¶ 102.

Plaintiff ordered a second three bureau report from Experian on June 8, 2016 ("June 2016 Credit Report"). FAC ¶ 103. That report revealed that numerous furnishers, including moving parties Seventh Avenue, Ginny's, and Monroe & Main, were continuing to report her accounts inconsistently with Plaintiff's Chapter 13 plan and industry standards. *Id.* ¶¶ 103-13.

Plaintiff filed this action on August 12, 2016, asserting violations of the FCRA and CCRAA against multiple CRAs and furnishers. Compl., ECF 1. Experian, Seventh Avenue, Ginny's, and Monroe & Main now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed

factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. EXPERIAN'S MOTION TO DISMISS

The FAC contains two claims, one for violation of the FCRA (Claim 1) and the other for violation of the CCRAA (Claim 2). Although the label of the CCRAA claim indicates that it is asserted against "Defendants," it is clear from the body of the FAC that the CCRAA claim is not asserted against Experian. Accordingly, only the FCRA claim is asserted against Experian. Experian moves to dismiss for failure to state a claim upon which relief may be granted.

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To that end, the FCRA imposes specific obligations on CRAs, furnishers, and other categories of persons not at issue here. *See generally* 15 U.S.C. § 1681 *et seq.* Many of the obligations of CRAs are described in 15 U.S.C. § 1681i. That section provides that if a consumer disputes "the completeness or accuracy of any item of information," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item." 15 U.S.C. § 1681i(a)(1). In addition, the CRA must provide notification of the dispute to the furnisher of the information. 15 U.S.C. § 1681i(a)(2). Such notification by the CRA triggers the furnisher's obligation to conduct its own investigation. 15 U.S.C. § 1681s-2(b). The FCRA expressly creates a private right of action for willful or negligent noncompliance with these requirements. 15 U.S.C. § 1681n & o.

Plaintiff's FCRA claim against Experian is subheaded "Failure to Reinvestigate Disputed Information." FAC ¶¶ 125-26. Plaintiff alleges that after she "disputed the accounts mentioned above" – which the Court takes to mean the twelve trade lines in the March 2016 Credit Report referenced earlier in the FAC – Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)(1). *Id.* ¶ 127. Plaintiff

3

claims that "[t]he most basic investigation required each CRA to send all relevant information via an ACDV to the furnishers which they did not do." *Id.* ¶ 128. Plaintiff alleges that because it did not send all relevant information to the furnishers, Experian "failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements." *Id.* ¶ 129.

In the alternative, Plaintiff alleges that Experian "has its own independent duty to conduct a reasonable investigation under 15 U.S.C. § 1681i(a)1." FAC ¶ 130. Section 1681i(a)(1) does not impose a freestanding duty to investigate; a CRA's duties under that provision are triggered only "if the completeness or accuracy of any item of information . . . is disputed by the consumer *and* the consumer notifies the agency . . . of such dispute." 15 U.S.C. § 1681i(a)(1) (emphasis added). Thus it is unclear what Plaintiff means by "own independent duty" to investigate. Plaintiff alleges that Experian "is not a passive entity" and that it "can and does suppress inaccurate information from being reported when DFs provide inaccurate information." FAC ¶¶ 131-33. Plaintiff also alleges that Experian "would have known" that certain furnishers were not following industry standards in their reporting. *Id.* ¶¶ 136-39. The Court understands these allegations to claim that regardless of what information was provided to Experian by furnishers, Experian had an independent duty to "suppress" that information if it did not comply with industry standards.

Experian moves to dismiss the FCRA claim on three grounds. First, Experian asserts that Plaintiff has not alleged facts showing that Experian's credit reporting was inaccurate. Second, Experian argues that Plaintiff has not alleged facts showing an entitlement to damages under the FCRA. And third, Experian asserts that Plaintiff has not alleged any facts showing that Experian's response to her dispute letter regarding the March 2016 Credit Report was improper.

**A.    Inaccuracy**

The Ninth Circuit has observed that "[a]lthough the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement." *Carvalho v. Equifax*

*Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).[2] "Thus, even if a . . . CRA fails to conduct a reasonable investigation or otherwise fails to fulfill its obligations under the FCRA, if a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's claims fail as a matter of law." *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *3 (N.D. Cal. Jan. 20, 2017) (internal quotation marks and citation omitted).

In *Carvalho*, the Ninth Circuit noted that it previously had "explained that an item on a credit report can be 'incomplete or inaccurate' within the meaning of the FCRA's furnisher investigation provision, 15 U.S.C. § 1681s-2(b)(1)(D), 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho*, 629 F.3d at 890 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (2009)). The Ninth Circuit went on to affirm "'the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation,'" *id.* (quoting *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994)), and to cite with approval a First Circuit case, *Chiang*, which the Ninth Circuit summarized as "deeming the term 'inaccurate' in section 1681i(a) to be 'essentially the same' as the term 'incomplete or inaccurate' in section 1681s-2(b)," *id.* (citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010)). Relying on *Carvalho*, district courts have "applied this 'patently incorrect or materially misleading' standard to claims arising under various provisions of the FCRA that involve the accuracy of information." *Prianto v. Experian Info. Sols., Inc.*, No. 13-CV-03461-TEH, 2014 WL 3381578, at *3 (N.D. Cal. July 10, 2014). In particular, courts in this district have applied the "patently incorrect or materially misleading" standard to the inaccuracy requirement under § 1681i. *See, e.g., Banneck v. HSBC Bank USA, N.A.*, No. 15-cv-02250-HSG, 2016 WL 3383960, at *6 (N.D. Cal. June 20, 2016); *Prianto*, 2014 WL 3381578, at *3.

---

[2] *Carvalho* involved claims asserted under the CCRAA, not the FCRA. *See Carvalho*, 629 F.3d at 881. However, in discussing the scope of the CCRAA, the Ninth Circuit drew heavily on cases construing the FCRA, *see id.* at 889-91, and numerous courts have relied on *Carvalho*'s explication of FCRA requirements when addressing FCRA claims, *see, e.g., Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017); *Jaras v. Experian Info. Sols., Inc.*, No. 16-CV-03336-LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016).

5

Experian argues that the FAC does not satisfy this pleading standard. The Court agrees for the reasons discussed below.

### 1. Three Bureau Report

Perhaps the most obvious deficiency in Plaintiff's allegations against Experian is her failure to allege that the inaccuracies in the "three bureau" March 2016 Credit Report upon which her claim is based are attributable to *Experian* rather than one of the other CRAs. FAC ¶ 99. Plaintiff alleges that she obtained the March 2016 Credit Report after confirmation of her Chapter 13 plan, and that "multiple trade lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, in collections, and/or charged off. Some accounts even failed to register that Plaintiff was making payments on the account through Plaintiff's Chapter 13 plan." *Id.* ¶¶ 97-99. These allegations neither identify Experian as the reporting entity nor identify any particular past due balances or other trade lines in the March 2016 Credit Report that were inaccurate.

Plaintiff argues that the requisite specificity is provided in paragraphs 106-13 of the FAC. Plaintiff does not allege that those allegations appeared in the March 2016 Credit Report upon which her claim is based, and in fact the referenced allegations follow directly after Plaintiff's description of how she obtained the June 2016 Credit Report. FAC ¶¶ 103-13. Plaintiff does not allege that she disputed the June 2016 Credit Report; she obtained the June 2016 Credit Report "to ensure Plaintiff's accounts had been updated." *Id.* ¶ 103. Therefore inaccuracies in the June 2016 Credit Report cannot form the basis of her claim.

Other courts in this district have dismissed FCRA claims based upon alleged inaccuracies in three bureau reports where no specificity is provided as to which CRA reported the inaccuracies in question. *See, e.g., Doster*, 2017 WL 264401, at \*6 ("Plaintiff's FAC makes only general and unspecified allegations that her credit report, which was a three-bureau credit report, contained inaccuracies and that the CRAs reported misleading and inaccurate information, but the FAC does not allege any conduct that is specific to Experian."). Because Plaintiff does not specify any particular inaccuracies that were reported in the March 2016 Credit Report, and does not identify Experian as the reporting entity, the FAC fails to state a claim of inaccurate reporting by Experian.

6

## 2. Reporting After Confirmation of Chapter 13 Plan

More fundamentally, to the extent that Plaintiff claims that it was inaccurate for Experian to report delinquencies or past due balances after plan confirmation, that theory of liability has been rejected by courts in this district and other districts within the Ninth Circuit. *See, e.g., Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *5 (N.D. Cal. Jan. 24, 2017) (collecting cases); *Doster*, 2017 WL 264401, at *6 ("[A]s a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy."); *Polvorosa v. Allied Collection Serv., Inc.*, No. Case No. 2:16–CV–1508 JCM (CWH), 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA.").

Plaintiff argues that these decisions fail to recognize that a bankruptcy court's order confirming a Chapter 13 plan constitutes a binding final judgment regarding the rights and liabilities of the debtor and his or her creditors. According to Plaintiff, because a confirmed plan modifies the original debts, any post-confirmation reporting of pre-confirmation delinquencies or balances is inaccurate. Plaintiff appears to be arguing that CRAs cannot report information provided to them by furnishers without first independently evaluating the legal effect of a confirmed Chapter 13 plan on such information.

In *Carvalho*, the Ninth Circuit noted that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." *Carvalho*, 629 F.3d at 892. In that case, the allegedly inaccurate reporting involved a charge for medical services that the plaintiff, Carvalho, claimed should have been paid by her insurance company. *Id.* at 882. After Carvalho disputed the charge, several CRAs requested and received verification of the debt from the furnisher. *Id.* The CRAs thereafter continued reporting the debt, but they added Carvalho's statement of dispute to her credit reports. *Id.* at 882-83. In rejecting Carvalho's argument that the CRAs were obligated to do more, the Ninth Circuit found that "[t]he fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals." *Id.* at 891. The Ninth Circuit reasoned that CRAs "simply collect and report information furnished by others" and thus are "ill equipped to adjudicate contract disputes." *Id.*

7

For that reason, "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.*

Plaintiff argues that *Carvalho* is distinguishable from the present case, because in *Carvalho* there had been no adjudication of the rights and obligations of the debtor and the creditor, whereas in the present case there has been such an adjudication in the form of an order confirming Plaintiff's Chapter 13 plan. Plaintiff's argument is unpersuasive. *Carvalho* did not turn on the lack of finality of the debt at issue, but rather on the Ninth Circuit's conclusion that CRAs are neither equipped nor obligated to determine the legal status of debts that have been reported and verified by furnishers.

Plaintiff's assertion of the legal effect of a Chapter 13 confirmation plan is unavailing for other reasons as well. It is true that "[t]he provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). Thus a creditor seeking payment on a debt is entitled only to those payments provided for under the plan, and "any issue decided under a plan is entitled to *res judicata* effect." *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015). However, the Court declines to make the logical leap urged by Plaintiff that these authorities, governing the relationships between parties to a bankruptcy action, make it a violation of the FCRA for a CRA to report a historically accurate pre-confirmation debt or delinquency. Regardless of how the rights and obligations of the parties to a bankruptcy are modified by a Chapter 13 plan, the original debt did exist prior to confirmation and Plaintiff has cited no authority suggesting that bankruptcy proceedings "erase" that historical fact for purposes of the FCRA.

Plaintiff's reliance on *In re Luedtke*, No. 02-35082-svk, 2008 WL 2952530 (Bankr. E.D. Wis. July 31, 2008), is misplaced. In *Luedtke*, the bankruptcy court concluded that a creditor whose claim was modified by a Chapter 13 confirmation order had violated that order by continuing to report the original debt to CRAs. *Id.* at *6. The court suggested that in addition to seeking sanctions for violation of the confirmed plan, the debtor also could have sought relief under the FCRA. *Id.* In making that suggestion, the bankruptcy court appeared to assume that the creditor's reporting of the original debt would have constituted an inaccuracy under the FCRA. *Id.* at *5. That view, expressed in *dicta* by a bankruptcy court outside the Ninth Circuit almost a

8

decade ago, has not been adopted by the courts in this district. At least one court outside the district has found the decision to be irrelevant to determination whether a plaintiff had pleaded a viable FCRA claim. *See, e.g., Wylie v. TransUnion, LLC*, No. 3:16-CV-102, 2017 WL 835205, at *5 n.6 (W.D. Pa. Mar. 2, 2017) ("[T]he question before the Court is whether Defendants reported accurate information, not whether Defendant violated the bankruptcy code.") (internal quotation marks and citation omitted).

Moreover, with respect to the many debtors who fail to make all required plan payments, the original debt terms ultimately are reinstated. *See Blendheim*, 803 F.3d at 487. Indeed, historically accurate debts may be reported even after discharge, so long as the credit report indicates that the debts were discharged in bankruptcy. *See Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, *9-11 (N.D. Cal. Apr. 10, 2013) (furnisher's reporting that the debt had been delinquent during the pendency of the bankruptcy was historically accurate and thus not actionable under the FCRA where report also indicated that the debt had been discharged in bankruptcy).

Plaintiff's counsel argued at the hearing that allowing reporting of pre-confirmation delinquencies or balances after a Chapter 13 plan has been confirmed will deprive debtors of significant benefits that they expect to obtain through Chapter 13 bankruptcy. That issue is one for Congress to resolve, not this Court. The Court's task in evaluating Plaintiff's FAC is to determine whether the facts alleged therein make out a plausible claim that Experian's credit reporting was inaccurate. The Court simply is not persuaded that the reporting of a delinquency or past due balance after plan confirmation is per se inaccurate under the FCRA.

However, it appears to be an open question whether such reporting could satisfy the inaccuracy requirement if the report is unaccompanied by any indication that the consumer is in bankruptcy. *See Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017) (declining to decide whether allegations that the "credit report contained no indication at all that the debts were the subject of a pending bankruptcy . . . would be sufficient to state a claim" but granting plaintiff leave to attempt to assert FCRA claim based on that theory). It is this Court's view that it may well be possible for a plaintiff to allege

facts showing that the reporting of a pre-confirmation debt or delinquency is materially misleading absent any reference to a pending Chapter 13 bankruptcy in the report, at least where a confirmed plan governs the timing and amounts of post-confirmation payments on the debt.

Plaintiff has not alleged such facts here, as she has not identified any particular inaccuracy contained in the March 2016 Credit Report upon which her claim is based, and has not stated whether the March 2016 Credit Report mentioned her bankruptcy.

### 3. Metro 2 Format

In addition to her theory of FCRA liability based on the effect of plan confirmation, Plaintiff asserts a related theory based on industry standards regarding credit reporting. She devotes more than thirty paragraphs of the FAC to a tutorial on industry standards and in particular the "Metro 2 format" adopted by the Consumer Data Industry Association ("CDIA"). *See* FAC ¶¶ 37-71. According to Plaintiff, Metro 2 provides instruction on what updates must be made when a bankruptcy is filed, and deviation from the Metro 2 format is inaccurate or misleading. The Ninth Circuit has not spoken on the effect of the Metro 2 format, if any, on the obligations of CRAs and furnishers under the FCRA. However, district courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA. *See, e.g., Doster*, 2017 WL 264401, at *5 (collecting cases); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-CV-03645-EMC, 2016 WL 7188015, at *3 (N.D. Cal. Dec. 12, 2016).

The out-of-district cases cited by Plaintiff do not persuade this Court to take a contrary view. In *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-CV-00624-JAG, 2013 WL 2389878, at *7 (E.D. Va. May 30, 2013), the district court held that industry standards could be considered at the summary judgment stage as part of the totality of evidence regarding the reasonableness of Experian's failure to identify the main source of disputed information. That ruling does not advance Plaintiff's argument that deviation from Metro 2 constitutes a per se inaccuracy under the FCRA. In *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15CV1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016), the district court held that the plaintiff had alleged a claim under the FCRA where she alleged that Metro 2 was Synchrony's chosen method of

10

reporting and that Synchrony's deviation from Metro 2 might be misleading to such an extent as to affect credit decisions. Courts in this district have found such allegations to be insufficient. *See, e.g., Mestayer*, 2016 WL 7188015, at *3 (credit report that deviated from Metro 2 was not misleading where report disclosed bankruptcy); *see also Doster*, 2017 WL 264401, at *5 (collecting cases). This Court finds the latter decisions to be better reasoned and therefore concludes that allegations that a credit report deviated from the Metro 2 format is insufficient, without more, to state a claim under the FCRA.

The Court does not mean to suggest that Metro 2 is wholly irrelevant to the evaluation of a claim asserted under the FCRA. It may be that allegations of deviations from the Metro 2 format could bolster other allegations of inaccuracy or be relevant to allegations of negligence on the part of the reporting entity. However, Plaintiff's reliance on Metro 2 as an independent source of liability under the FCRA is unavailing.

### B. Damages

Experian also asserts that Plaintiff has failed to allege facts sufficient to entitle her to recovery of damages. The FCRA creates a private right of action for willful or negligent noncompliance with § 1681i. 15 U.S.C. §§ 1681n & o; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (2009). If a failure to comply with § 1681i is willful, the plaintiff may recover either actual damages or statutory damages between $100 and $1,000, as well as any appropriate punitive damages. 15 U.S.C. § 1681n(a). If a failure to comply with § 1681i is negligent, the plaintiff is limited to recovery of "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). Experian contends that Plaintiff has not alleged facts showing entitlement to recovery under either theory.

#### 1. Willfulness

A defendant acts "willfully" for purposes of the FCRA if the defendant knowingly or recklessly disregards its statutory duties. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was

11

merely careless." *Id.* at 69. Thus a plaintiff seeking to recover damages under a willfulness theory "must allege, at a minimum, that the defendant's reading of the FCRA is 'objectively unreasonable.'" *Kirchner v. Shred-it USA Inc.*, No. 2:14-1437 WBS, 2014 WL 6685210, at *1 (E.D. Cal. Nov. 25, 2014) (quoting *Safeco*, 551 U.S. at 69).

As discussed above, Plaintiff has not sufficiently alleged that Experian's reporting contained an actual inaccuracy. Even had she done so, she has not alleged any facts showing that such inaccuracy was the result of Experian's knowing or reckless disregard of its statutory duties. Plaintiff argues in her opposition that Experian recklessly disregarded its statutory duties by failing to reinvestigate Plaintiff's dispute or correct the alleged inaccuracies as prescribed by industry standards, when it knew that the disputed report deviated from Metro 2. As discussed, deviation from the Metro 2 format alone is insufficient to state a violation of the FCRA.

### 2. Negligence

In order to recover under a negligence theory, Plaintiff must plead and prove actual damages resulting from Experian's violation of the FCRA. 15 U.S.C. § 1681o(a)(1). Plaintiff's FCRA claim against Experian is based on her allegations that after Plaintiff disputed information in the March 2016 Credit Report, Experian failed to reinvestigate. *See* FAC ¶¶ 126-40. However, she does not allege facts showing that she suffered any damages flowing from Experian's alleged failure. *See id.*

Accordingly, the FAC is subject to dismissal on the ground that Plaintiff has failed to allege facts showing an entitlement to damages.

### C. Lack of Factual Specificity

Experian's final argument is that Plaintiff has not provided any factual basis for her allegation that Experian's response to her dispute letter was inadequate. The Court agrees.

Plaintiff alleges that after she disputed the March 2016 Credit Report, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate. FAC ¶ 127. Plaintiff then claims that each CRA was required "to send all relevant information via an ACDV to the furnishers which they did not do." *Id.* ¶ 128. When a consumer disputes information on a credit report, the CRA must provide notification of the dispute to the furnisher of

the information. 15 U.S.C. § 1681i(a)(2). Thus an allegation that Plaintiff disputed a particular account reported in the March 2016 Credit Report, and that Experian failed to notify the furnisher of the disputed information, would state a claim under the FCRA, assuming that all other pleading requirements regarding inaccuracy and damages were satisfied. However, as discussed above, Plaintiff's allegations regarding the asserted inaccuracies in the March 2016 Credit Report do not identify any particular account or item of information reported by Experian. Moreover, elsewhere in the FAC Plaintiff alleges that "each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV." FAC ¶ 102. Based on that allegation, it would appear that Experian *did* satisfy its notification obligations under the FCRA.

Plaintiff also alleges that Experian would have known that the furnishers' reporting of certain accounts deviated from the industry standard, but Experian did not suppress that inaccurate information. FAC ¶¶ 136-39. Plaintiff does not identify any specific errors or inaccuracies that Experian should have suppressed. Plaintiff alleges only that Experian "would have known" that "failure to report a CII given that a Chapter 13 was filed" and "reporting a past due balance post confirmation" do not comport with industry standards. *Id.* These allegations are not sufficient to state a claim under 15 U.S.C. § 1681i(a)(1).

Plaintiff's conclusory allegation that Experian "failed to conduct a reasonable investigation," *id*. ¶ 129, likewise is inadequate to state a claim under the FCRA. *See O'Connor v. Capital One, N.A.*, No. CV 14-00177-KAW, 2014 WL 2215965, at *7 (N.D. Cal. May 29, 2014) (No FCRA claim stated where plaintiff "fails to offer any factual allegations supporting his contention that Defendant's investigation of his disputed account was unreasonable").

Accordingly, Experian's motion to dismiss Plaintiff's FCRA claim is GRANTED.

**IV. MOTION TO DISMISS BROUGHT BY SEVENTH AVENUE, GINNY'S, AND MONROE & MAIN**

Both Claim 1 for violation of the FCRA and Claim 2 for violation of the CCRAA are asserted against Seventh Avenue, Ginny's, and Monroe & Main (collectively, "the Furnisher Defendants"), all of whom seek dismissal of both claims under Rule 12(b)(6).

### A. FCRA (Claim 1)

The FCRA creates a private right of action against furnishers for noncompliance with duties imposed under 15 U.S.C. § 1681s-2(b). *Gorman*, 584 F.3d at 1154. Section 1681s-2(b) imposes certain obligations on a furnisher, such as a duty to conduct an investigation, when the furnisher receives notice from a CRA that a consumer disputes information reported by the furnisher. *Id.* A plaintiff is required to plead and prove four elements to prevail on an FCRA claim against a credit furnisher: "(1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b) (1)(A)-(E)." *Denison v. Citifinancial Servicing LLC*, No. C 16-00432 WHA, 2016 WL 1718220, at *2 (N.D. Cal. Apr. 29, 2016). A furnisher's duties under § 1681s-2(b) of the FCRA arise "only after the furnisher receives notice of dispute from a CRA." *Gorman*, 584 F.3d at 1154.

Plaintiff's FCRA claim against the Furnisher Defendants is subheaded "Failure to Reinvestigate." FAC ¶ 115-16. Plaintiff alleges that the Furnisher Defendants "violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information." *Id.* ¶ 118. Presumably, this claim is based upon the Furnisher Defendants' conduct upon receiving notice of Plaintiff's disputes regarding the March 2016 Credit Report. Plaintiff alleges that she sent dispute letters to Experian and other CRAs regarding unidentified inaccuracies contained in the March 2016 Credit Report, and that the CRAs in turn sent Plaintiff's dispute to each furnisher by means of an ACDV. *Id.* ¶¶ 100-02.

The Furnisher Defendants move to dismiss the FCRA claim on three grounds. First, they assert that Plaintiff lacks standing to pursue this action because her FCRA claim is an asset of her bankruptcy estate which may be litigated only by Chapter 13 trustee. Second, they assert that they did not report inaccurate or misleading information. And third, they argue that Plaintiff has not alleged a factual inaccuracy in their reporting. The Furnisher Defendants also request that the Court take judicial notice of documents filed in Plaintiff's bankruptcy case. *See* RJN, ECF 67.

14

That request is GRANTED, as the documents are proper subject for judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

### 1. Standing

The Furnisher Defendants assert that Plaintiff's FCRA claim is an asset of her bankruptcy estate which may be litigated only by the Chapter 13 trustee, and therefore that Plaintiff lacks standing to litigate the claim. The Ninth Circuit has yet to address the question of whether a Chapter 13 debtor retains standing to prosecute a claim on behalf of the bankruptcy estate. *Foronda v. Wells Fargo Home Mortg., Inc.*, No. 14-CV-03513-LHK, 2014 WL 6706815, at *4 (N.D. Cal. Nov. 26, 2014). However, every other circuit to address the question has found standing. *See id.* (collecting cases). District courts within the Ninth Circuit have reached the same conclusion. *See, e.g., Joseph v. Renal Care Grp., Inc.*, No. C15-5178 BHS, 2016 WL 772799, at *3 (W.D. Wash. Feb. 29, 2016); *Foronda*, 2014 WL 6706815, at *5. Accordingly, Plaintiff's FCRA claim is not subject to dismissal for lack of standing.

### 2. Reporting Inaccurate or Misleading Information or Factual Inaccuracy

The Court addresses the Furnisher Defendants' remaining two arguments together – that they did not report inaccurate or misleading information and that Plaintiff has not identified a factual inaccuracy in their reporting. Those arguments are well-taken for the reasons discussed in section III, above. Consistent with the Court's discussion above, Plaintiff might be able to allege the existence of an inaccuracy based on reporting of specific debt amounts or delinquencies after confirmation of Plaintiff's Chapter 13 plan if the reporting contained no mention of Plaintiff's bankruptcy. *See Devincenzi*, 2017 WL 86131, at *7 (declining to decide whether allegations that the "credit report contained no indication at all that the debts were the subject of a pending bankruptcy . . . would be sufficient to state a claim" but granting plaintiff leave to attempt to assert FCRA claim based on that theory). Plaintiff has not alleged such reporting with respect to the March 2016 Credit Report, which is the only report she alleges that she disputed.

The Furnisher Defendants' motion to dismiss Plaintiff's FCRA claim is GRANTED on this basis.

### B. CCRAA (Claim 2)

Subject matter jurisdiction in this case is based on federal question with respect to Plaintiff's FCRA claim and supplemental jurisdiction with respect to her CCRAA claim. *See* FAC ¶ 13. Plaintiff has yet to allege a viable federal claim, and if she fails to do so this Court will decline to exercise supplemental jurisdiction over her state law claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation marks and citation omitted).

Accordingly, the Court DECLINES TO ADDRESS the merits of Plaintiff's CCRAA claim against Credit One at this time.

### V. LEAVE TO AMEND

Having concluded that Experian and the Furnisher Defendants are entitled to dismissal of Plaintiff's FCRA claims against them, the Court must determine whether leave to amend is warranted. In deciding whether to grant Plaintiff leave to amend her pleading, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

The first factor (undue delay), second factor (bad faith), and fourth factor (undue prejudice) do not weigh against granting leave to amend at this time, although the Court may well have a different view in the event that Plaintiff's counsel fails to address the deficiencies addressed herein and persists in submitting pleadings consisting primarily of copy-and-paste

boilerplate allegations. The third factor (failure to cure deficiencies) weighs slightly against granting leave to amend, as Plaintiff previously amended her pleading. Finally, with respect to the fifth factor (futility of amendment), the Court has grave reservations whether Plaintiff will be able to state a viable FCRA claim against Experian or Credit One. However, because it is not clear that Plaintiff cannot do so, the Court will grant her leave to amend.

If Plaintiff chooses to amend her FCRA claim, she shall allege with specificity what reporting is attributable to each defendant and shall attach a copy of each report or allege the contents of the offending trade lines verbatim. Failure to do so will be deemed an admission that Plaintiff is incapable of pleading specific facts giving rise to liability under the FCRA.

## VI. ORDER

(1) Defendant Experian's motion to dismiss the FAC is GRANTED WITH LEAVE TO AMEND;

(2) The motion to dismiss brought by Seventh Avenue, Ginny's, and Monroe & Main is GRANTED WITH LEAVE TO AMEND as to Plaintiff's FCRA claim; the Court declines to address Plaintiff's CCRAA claim unless and until Plaintiff states a viable federal claim;

(3) Leave to amend is limited to the FCRA claim discussed in this order and the related CCRAA claim; Plaintiff may not add new claims or parties without express leave of the Court;

(4) Any amended pleading shall be filed on or before May 17, 2017; and

(5) Failure to meet the May 17 deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiff's claims with prejudice.

Dated: April 26, 2017

_____
BETH LABSON FREEMAN
United States District Judge

17